FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com
DarrasLaw
3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone: (909) 390-3770
Facsimile: (909) 974-2121

Attorneys for Plaintiff
DONNA WASHINGTON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA WASHINGTON,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq*. (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.



DarrasLaw

Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that the First Bank, Inc. Group Long Term Disability Plan ("Plan") is an employee welfare benefit plan established and maintained by First Bank, Inc. to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, DONNA WASHINGTON ("Plaintiff" and/or MS. WASHINGTON"), with income protection in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about November 1, 1956, LINA has been registered as a corporation with the state of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

6. At all relevant times Plaintiff was a resident and citizen of the United States, an employee of First Bank, Inc., its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number LK-0963455 that had been issued by Defendant LINA to First Bank, Inc. to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

8. The subject Policy promised to pay Plaintiff monthly long term disability benefits for a specified period of time should he become disabled. Therefore, LINA both funds and decides whether claimants will receive benefits under the Plan and as such

suffers from a structural conflict which requires additional skepticism.

9. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plan, if Plaintiff became disabled, LINA promised to pay long term disability benefits to Plaintiff as follows:

- Elimination Period: 90 Days
- Gross Disability Benefit:
  - The lesser of 60% an Employee's monthly Covered Earnings rounded to the nearest dollar, or the Maximum Disability Benefit.
- Maximum Disability Benefit: $15,000 per month.
- Minimum Disability Benefit: The greater of $100 of 15% of an Employee's Monthly Benefit prior to any reductions for Other Income Benefits.
- Maximum Benefit Period:
  - Age 62 or under – The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later.
- Definition of Disability/Disabled:
  - The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
    - 1. unable to perform the material and substantial duties of his or her Regular Occupation; and
    - 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
  - After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
    - 1. unable to perform the material and substantial duties of any occupation for which he or she is, or becomes qualified based on education, training or experience; and
    - 2. unable to earn 60% or more of his or her Indexed

Earnings.

10. Prior to her disability under the terms of the Plan, on or about December 24, 2009, Plaintiff, who had been employed with First Bank, Inc., was working as a Customer Service Representative/Mortgage Loan Closer.

11. However, on or about December 4, 2015, Plaintiff became disabled under the terms of the Plan due to her right knee and back pain and timely submitted a claim to LINA for payment of disability benefits.

12. However, on or about May 16, 2016, LINA unreasonably and unlawfully denied her long term disability claim. And, on or about January 10, 2017, LINA unreasonably and unlawfully upheld its denial of the disability claim.

13. According to LINA's denial letters:

- **May 16, 2016**: "The medical records on file do not provide evidence of functional deficits that would prevent you from returning to work in your own occupation…You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal."
- **January 10, 2017**: "After completing our review of Ms. Washington's claim, we must uphold our prior decision to deny her claim."

14. In so doing, LINA unreasonably and unlawfully failed to timely identify the medical personnel who reviewed Plaintiff's file; relied upon the opinions of physicians who were financially biased and/or not qualified to refute the findings of Plaintiff's board certified physicians; relied strictly upon physical requirements of occupations instead of taking into consideration the non-exertional requirements of Plaintiff's own, or any, occupation; and misrepresented the terms of the Policy.

15. Additionally, LINA knew, or should have known, that the documentation submitted to and/or obtained by LINA clearly substantiated Plaintiff's disability,

DarrasLaw

DarrasLaw

including, but not limited to, the following:

- On or about December 5, 2015, Plaintiff treated with Primary Care Physician Dr. Robert Poetz, D.O. ("Dr. Poetz") for her right leg pain. Dr. Poetz noted right knee crepitus and tenderness to palpation.
- On or about, December 11, 2015, Dr. Poetz found Plaintiff to have decreased range of motion in her lumbar spine and hips bilaterally as well as swelling and enlargement of the right neck.
- On or about December 30, 2015, Plaintiff underwent an MRI of her lumbar spine. The findings included a "large disc herniation extending to the left of midline at L4-5 is significantly increased in size when compared to previous examination. This now results in a severe central canal and left lateral recess stenosis."
- On or about January 5, 2016, Plaintiff exhibited lumbar spine tenderness to palpation, numbness down her right leg and toes, right knee crepitus, and decreased range of motion to the right knee.
- On or about January 13, 2016, Plaintiff sought treatment from Physical Medicine and Rehabilitation Specialist Dr. Syed Abdul A. Khader, M.D. ("Dr. Khader") for her ongoing lower back and lower right extremity pain. Upon examination of her gait, Dr. Khader found that Plaintiff was experiencing a decreased stride length and difficulty in heel walk and toe walk on her right foot. He further noted lumbar paraspinal tenderness, decreased range of motion in flexion and extension, as well as positive straight leg raising test and sit slump tests.
- On or about January 13, 2016, Plaintiff underwent an MRI of her right knee which revealed an "oblique tear involving the posterior horn of the medial meniscus which extends into the posterior root

ligament. There is formation of an adjacent parameniscal cyst."

- On or about January 22, 2016, Plaintiff received a Translaminar Epidural Steroid to her right, L5-S1 region administered by Dr. Khader.
- On or about January 27, 2016, Plaintiff was seen by Orthopedic Surgeon Dr. Terry Weis, D.O. ("Dr. Weis") to address her complaints of a dull ache and sharp pain in her right knee. Upon examination, Dr. Weis found Plaintiff to be experiencing a large knee effusion along with tenderness over the medial joint line. Dr. Weis also noted positive McMurray's and Apley's test.
- On or about January 28, 2016, Dr. Poetz responded to an attending physician statement. Dr. Poetz stated:
    - Primary Diagnosis: Right knee meniscus tear
    - What are the specific additional factors impacting return to work? Pt with torn meniscus to right knee, patient unable to ambulate due to knee instability.
    - Specific restrictions that you have placed on your patient?
        - Totally incapacitated
    - At home
        - Rest
    - Could your patient RTW at this time if accommodations were made for the listed restrictions?
        - Pt must rest.
- On or about February 17, 2016, Dr. Weis performed an arthroscopy and partial medial meniscectomy on Plaintiff.
- On or about March 29, 2016, Dr. Poetz responded to an attending

physician statement, stating:

- Primary Diagnosis: Radiculopathy, Degenerative Disc Disease
- What are the specific additional factor impacting returns to work?
  - Pain, walks with difficulties, weakness to legs bilaterally, radiculopathy
- What are the specific restrictions that you have placed on your patient? Unable to sit for prolonged time.
- At home:
  - cleaning with pain
  - daughter helps dressing, shopping, preparing meals
- Throughout the 8 hour workday, your patient can tolerate the following activities for the specified duration:
  - Sitting: occasionally
  - Standing: occasionally
  - Walking: occasionally
  - Reaching overhead: occasionally
  - Reaching desk level: occasionally
  - Reaching below waist: occasionally

- On or about April 25, 2016, Neurosurgeon Dr. Daniel J. Scondary, MD ("Dr. Scondary") noted that Plaintiff demonstrated pain with range of motion and required a cane to walk.
- On or about May 12, 2016, Plaintiff followed up with Dr. Poetz to continue treatment of her lower back and right leg pain. Dr. Poetz found Plaintiff to be experiencing deceased range of motion with



DarrasLaw

hip flexion and knee extension and decreased sensation throughout her dermatomes of her right leg. Plaintiff was diagnosed with advanced lumbar degenerative disc disease and hypertension. Dr. Poetz opined that Plaintiff was disabled and required Plaintiff take 30 days off work.

- On or about July 12, 2016, Plaintiff exhibited cervical and lumbar tenderness to palpation with extremity weakness in addition to decreased strength in her upper extremities and lower extremities. Plaintiff ambulated with a cane due to her abnormal gait.
- On or about November 21, 2016, Dr. Poetz responded to a disability questionnaire, stating:
    - Please confirm diagnosis:
        - Degenerative disc disease
        - Herniation
        - Lumbar stenosis
        - Radiculopathy
    - Please confirm symptoms:
        - Low back numbness, right leg extending to right foot
        - Abnormal gait
    - Please identify clinical findings and objective signs of conditions that have been diagnosed:
        - TTP to lumbar spine
        - Abnormal gait
        - Radiculopathy
    - Please confirm Donna Washington's ability to:
        - Sit in an 8 hr work day (at one time): 0-1 hrs, must take breaks @ 20-30 mins of sitting – rest,

meaning lying down

- Sit in an 8 hr work day (total): 1-2 hours
- Stand/walk in an 8 hr work day (at one time): 20-30 mins, then must lay down 1 hour
- Stand/walk in an 8 hr work day (total): unable to continuous stand than 20-30
- Lift/carry on an occasional basis: 0-5 lbs
- Lift/carry on a frequent basis: 0-5 lbs

16. To date, even though Plaintiff has been disabled, LINA has not paid Plaintiff any disability benefits under the Policy. The unlawful nature of LINA's denial decision is evidenced by, but not limited to, the following:

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed her file; failing to timely advise Plaintiff of what specific documentation it needed from her to perfect her claim; and, failing to provide a complete copy of all documents, records, and other information relevant to her claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);
- LINA ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim; and,
- LINA ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should be given to the treating physician's opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, LINA's highly conflicted physician's opinion does not serve as substantial evidence, as it is not supported by evidence in the claim file, was not issued by a physician with the same

DarrasLaw

level of medical expertise as the board certified treating physicians, nor is it consistent with the overall evidence in the claim file.

17. For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan and contrary to law. Further, LINA's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

18. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

19. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about  to the present date.

20. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

21. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that she meets the Plan definition of disability and consequently she is entitled to all benefits from the Plan to which she might be entitled while receiving disability benefits, with

DarrasLaw

reimbursement of all expenses and premiums paid for such benefits from March 3, 2016 to present. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid Plaintiff beginning on or about March 3, 2016, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which she might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2. An order determining Plaintiff is entitled to future disability payments/benefits so long as she remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: April 14, 2017

DarrasLaw

PHILLIP S. BATHER
Attorneys for Plaintiff
DONNA WASHINGTON